LUIGI LITTERIO AND MARY ANN LITTERIO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Litterio v. Commissioner
Docket No. 11581-90
United States Tax Court
T.C. Memo 1992-524; 1992 Tax Ct. Memo LEXIS 543; 64 T.C.M. (CCH) 686; September 8, 1992, Filed *543 Decision will be entered under Rule 155. For Petitioners: David B. Lamb. For Respondent: Warren P. Simonsen and Lindsey D. Stellwagen. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notice of deficiency, respondent determined deficiencies and additions to tax against petitioners as follows: Calendar
Additions to Tax [1]
Years
Deficiency
Sec. 6653(a)(1)*
Sec. 6653(a)(2)
Sec. 6661
1985
$ 30,261
$ 1,513 **
$ 4,956
1986
15,811
791 **
--
1987
6,456
323 **
--
After concessions, the issues to be determined are: (a) The amount, *544 if any, of long-term capital gain which petitioners realized from the sale of their home in 1985; and (b) whether petitioners suffered ordinary deductions from business bad debt losses in each of the years in question. [2]
FINDINGS OF FACT Some of the facts were stipulated, and such facts, together with related exhibits, are incorporated herein by reference. Petitioners, husband *545 and wife, filed joint returns for the years in issue. They were residents of Virginia when they filed their petition herein. "Petitioner" will hereinafter refer to Luigi Litterio. During the years at issue, and for a number of years prior thereto, petitioner was employed in various capacities in businesses which were wholly owned by his parents: N. Litterio & Co., Inc. (Litterio); Maryland Masonry Contracting Co., Inc. (Maryland Masonry); Rainbow Contracting, Inc. (Rainbow); and Maryland Cast Stone, Inc. (Maryland Cast Stone). Petitioners were never stockholders in any of these companies, but, by the time of the years in question, petitioner's father had died, his mother had succeeded to all the stock of the companies, and petitioner was officer of at least two of the companies as well as serving on the boards of directors. He was the effective operating head of Litterio and Maryland Masonry, and he was paid a salary. These companies were all engaged in the contracting or subcontracting aspects of the masonry business, and they were the principal source of petitioner's employment. Sometime in the year 1973, petitioners sold the home which they occupied with their children on *546 Braddock Road in Alexandria, Virginia. The net proceeds of this sale were $ 49,052.75. Petitioners combined these proceeds with personal savings of $ 25,000, purchased another lot, and built a house on Dominion Valley Drive. Petitioner acted as his own contractor in the building of this house, and some of the materials and fixtures therein may have been gifts to petitioners from family and friends. Nevertheless, petitioners had an identifiable cost basis (before adjustment, see infra) of $ 74,052.75 in this new home. In 1985, petitioners sold this new residence for a gross price of $ 350,000, and purchased another smaller home in the area. In reporting their taxable gain on the sale of this residence, petitioners claimed a cost basis of $ 260,900. Upon audit, respondent, after making certain other adjustments to which petitioners have not objected, determined that petitioners had no allowable cost basis in the residence which was sold. In the early 1980s, the Litterio family companies mentioned above began to suffer differing degrees of financial hardship, for various reasons, including declining business. In an effort to save his sole source of employment, petitioner *547 and his wife refinanced their home, borrowing $ 249,000. With the money thus obtained, petitioner in 1983 made cash loans totaling $ 113,524.55 to Litterio. These loans were made by checks at various times during the year. Dealing with his mother's companies, as he did, petitioner required no promissory notes or collateral. He received no interest. He made the loans to tide Litterio over a difficult financial period, and he did expect repayment. Contrary to his expectations, however, the business conditions of Litterio grew worse and worse. It ceased operations in 1985 and was completely without assets by 1986. Except for a partial repayment of the loans in 1985, in the amount of $ 51,348, the unpaid balance of the loans, in the amount of $ 62,176.55, became worthless in 1986. In their 1985 and 1986 returns, petitioners claimed business bad debt losses on account of the partial worthlessness of the Litterio loans in the respective amounts of $ 30,000 and $ 25,000, and, in their 1987 return, petitioners claimed a business bad debt loss from the entire worthlessness of the remaining balance of $ 36,012 with respect to the Litterio loans. In addition, in their 1986 return, *548 petitioners claimed a business bad debt loss of $ 29,972 on account of the alleged worthlessness of loans by petitioner to Maryland Masonry. Upon audit, respondent disallowed all the deductions from the alleged loans to Litterio and Maryland Masonry, on the grounds that, inter alia, no true debt relationship had been created, and no worthlessness had been shown. The primary or dominant reason for petitioner's loans to Litterio was to keep that company in business and to secure petitioner's employment. OPINION The issues which we must resolve in this case are in large part factual. To the extent that we have held against the petitioners, it is for failure to carry their necessary burden of proof, which was upon them with respect to both of the issues presented in this case. Rule 142(a); . Petitioners were the only witnesses at the trial of this case. Their testimony was frequently vague, general, and lacked the independent evidentiary support that one would reasonably expect these petitioners to have with respect to the issues presented. As the Ninth Circuit said in , *549 affg. : We know of no rule that uncontradicted testimony must be accepted by a court finding the facts, particularly where, as here, the testimony is given by interested parties. Both petitioners here were interested parties. Where we have found their testimony credible and unshaken by cross-examination, we have accepted it. In some cases, this was made easier by the rather sketchy documentary evidentiary support which was provided. Where one could reasonably expect that petitioners' allegations would be supported by documentary evidence of a type which petitioners could be expected to have preserved, or could obtain from another source -- such as mortgages, canceled checks, recorded trusts, and real estate settlement sheets -- and where such evidence was not produced, we have felt at liberty to disregard the naked testimony. As this Court stated in , affd. : The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, *550 gives rise to the presumption that if produced, it would be unfavorable. * * * This is especially true where, as here, the party failing to produce the evidence has the burden of proof * * * This, then, accounts for much of the failure of petitioners herein. Nevertheless, mathematical exactness is not required. Where the evidence gives a sufficient basis for the allowance of a deduction, and where the evidence satisfies the Court that a legitimate expenditure has taken place, the Court will do the best it can with the evidence before it. In , affg. and revg. , the taxpayer at trial established that he had had considerable expenses of a deductible nature, but the proof was sketchy and inexact as to specific amounts. This Court (then known as the Board of Tax Appeals) refused to allow any amounts, on the grounds that the exact amounts could not be established. In reversing as to this item, the Second Circuit said, at : Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation *551 as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. * * * The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any, * * *. It is not fatal that the result will inevitably be speculative; many important decisions must be such. * * * Applying the above principles, we have concluded that petitioners have satisfactorily established a cost basis of $ 74,052.75 with respect to their new home on Dominion Valley Drive, and we allow that as their initial cost basis in the computation of the gain upon the sale of that property in 1985. (Other adjustments to the price, which respondent made in her statutory notice, with respect to items such as selling expenses and the carryover of deferred profit from the sale of petitioners' Braddock Road property in prior years, were not challenged by petitioners and are not disturbed by the Court herein.) We have not found any cost basis due to alleged loans from Alexandria National Bank, as petitioners testified; they produced no independent evidence of any such loans, such as loan documents from the bank or real estate settlement sheets showing *552 the incumbrance of the property by an appropriate deed of trust. Likewise, the testimony of petitioners with regard to additions to their cost basis through gifts of materials by friends and relatives in the construction of the house was entirely too vague and general to be acceptable by the Court. Turning to the larger issue of the alleged bad debt losses suffered by petitioner in all 3 years in question, the same sort of problem presents itself. With respect to the alleged loans which petitioner made to Maryland Masonry by placing a $ 350,000 mortgage or deed of trust on his home, not a shred of documentary evidence was offered to show that such loans ever existed. Indeed, the settlement sheet upon the sale of petitioners' home, which might be expected to show the disposition or satisfaction of that deed of trust, fails to disclose it entirely. Likewise, no canceled checks or any other independent evidence was produced to verify any such loans made by petitioner, and accordingly we do not allow them. As to the loans to Litterio, however, independent evidence was produced showing that during the year 1983 petitioner made cash advances totaling $ 113,524.55 to that company. *553 Petitioners claimed more, but were unable to produce sufficient outside evidence to substantiate it. In this case, the Court has found that petitioner made these loans to Litterio in order to help that business continue to function and in order to preserve his principal employment. Litterio was the family business, in which petitioner had been employed for many years, although he was not a stockholder. When his father died in 1980, petitioner's mother became the sole stockholder. In these circumstances, we accept that petitioner did not require written evidences of debt from his mother's company, or the payment of interest. To the extent that petitioner has proved the cash advances, the Court has allowed them, and the Court agrees with petitioners that the dominant motivation for the loans was the preservation of petitioner's employment. This being the case, and the Court being satisfied that the loan became worthless in 1986, we allow it as a business bad debt loss in that year, in the amount of $ 62,176.55, after the partial repayment in 1985. See ; , *554 revg. . We sustain respondent on her disallowance of the claimed losses with respect to the Litterio loans in 1985 and 1987, since we believe there was no partial worthlessness proved by petitioners in either of those years. We think that the Litterio debt became worthless in its entirety in 1986 when it was determined that there were no assets left in the company to meet any claims. To give effect to the above, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.
* For the years 1986 and 1987, the reference is to sec. 6653(a)(1)(A). ** For the years 1986 and 1987, the reference is to sec. 6653(a)(1)(B). The additions to tax are 50 percent of the interest on the underpayments as determined.↩
2. In addition to the above issues, the following issues, although raised in the petition, were not mentioned at trial or in petitioners' briefs and are considered to be abandoned: (c) whether petitioners are entitled to itemized deductions in 1986 in excess of those allowed by respondent; (d) whether petitioners are liable for additions to tax for each year for negligence under the appropriate subdivision of sec. 6653(a); and (e) whether petitioners are liable for additions to tax for substantial understatement under the provisions of sec. 6661 for 1985. .↩